IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CATHY SKROCKI | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | NO. 05-CV-05926 |
| CARPENTER TECHNOLOGY CORP. | : | |

MEMORANDUM OPINION AND ORDER

GOLDEN, J.                                                                    March 29, 2007


        Plaintiff Cathy Skrocki began her career at Carpenter Technology in 1987, and was

eventually promoted to become Carpenter's only female forge specialist.  Following a dispute

with co-worker Don Greenwood, Skrocki was terminated in August 2002.  Skrocki filed an

action in the Lehigh County Court of Common Pleas, claiming that Carpenter maintained a

hostile work environment and that her firing resulted from differential treatment and

discrimination against her based on her sex, in violation of Title VII.  Carpenter removed the case

to federal court.  After discovery, Carpenter moved for Summary Judgment.  For the reasons

discussed below, Carpenter's Motion for Summary Judgment is GRANTED.

**Factual Background**

        Defendant Carpenter Technology is a Reading-based manufacturer of specialty alloys

with more than 4,000 employees.  In dealing with employee performance, Carpenter employs a

four step disciplinary process.  When an employee commits a transgression, he or she is "taken"

to a step between one and four depending on the seriousness of the mistake.  Some errors, such

as physical fighting, are considered intolerable offenses and can result in immediate termination,

or step four.  Other errors, such as sleeping on the job, will not result in Carpenter taking an employee into the step system; instead, supervisors will have "documented discussions" about how employees can improve their performance.  In between these poles are offenses that will result in an employee being taken to steps one, two, and three.  After a year has passed since a disciplinary episode, the employee's slate is largely wiped clean.  Carpenter reserves the right, however, to consider the whole of an employee's record and disciplinary history when significant problems and the specter of termination arise.

At the time of her termination, plaintiff Skrocki had an extensive disciplinary record.  Her early tenure at Carpenter was marked with struggles over tardiness and absenteeism.  When she was promoted, based on her seniority, to the position of forge specialist, her new colleagues expressed dismay that she was chosen for a job that required steady attendance.  At one point, Skrocki's coworkers, led by Travis Ammarell, posted her schedule and work records in a public area, ridiculing her attendance record.  Following a meeting to decry this behavior, Ammarell was taken to step one of Carpenter's disciplinary process.  Skrocki was disappointed that he was not disciplined more heavily, but acknowledged that Ammarell had no prior record of disruptive behavior.

During discovery, Skrocki described a generally tense work environment.  She believed that her co-workers were trying to set her up to make mistakes on the job.  Her co-worker Theresa Washington, a frequent visitor to the forge, reported that the men in the forge would refuse to sign up to cover Skrocki's shifts when she wanted time off on short notice.  Skrocki claims that on at least one occasion, a male co-worker claimed that he would have taken the hours but for the disapproval of "the other guys."  Washington also noted that the men did not

help Skrocki with tasks most easily done in pairs, such as breaking bolts.  Co-worker Larry Black once placed a crank phone call to Skrocki as she worked in the grinding booth, repeating the statement "your boyfriend's a homo."  Finally, Skrocki testified at her deposition about two distressing episodes of explicit sexual harassment: first, a male co-worker recommended that she "go home and make babies;" and second, a collage featuring Skrocki's head on a naked body was posted in the workplace.  Both of these incidents took place before 1997.

The episode that gave rise to Skrocki's termination began with co-worker Don Greenwood allegedly "moo-ing" Skrocki over the forge's intercom system on August 18, 2002. Carpenter employees "moo" each other to suggest that they are deliberately slowing down work to "milk" their jobs.  "Moo-ing" has no sexual or gendered connotation.  Nonetheless, Skrocki found the "moo-ing" to be a distraction.

Prior to this "moo-ing," Skrocki and Greenwood had never had a personal conflict, although Skrocki believed that Greenwood had gotten away with calling out of work for personal reasons, while she had been disciplined for a similar offense, earlier in the summer of 2002. Both Skrocki and Greenwood had posted sheets looking for coverage of their shifts on short notice.  No one from the forge had volunteered to take on the overtime.  Skrocki called off "for personal reasons"; Greenwood called off claiming he was ill.  Skrocki was taken to the first step of the disciplinary process but Greenwood was not, as Carpenter management believed that he had called off for a legitimate reason.

The following day, on August 19th, Skrocki followed Greenwood into the furnace room to confront him about the "moo-ing" episode.  Their encounter devolved into shouting, with Greenwood standing over Skrocki, who allegedly pushed him away.  Two witnesses to the

encounter between Skrocki and Greenwood described her as the instigator of the confrontation. One account had Skrocki making physical contact with Greenwood by reaching up for his neck; the other account had Skrocki and Greenwood making contact, but not shoving each other.  In her complaint, Skrocki had averred that Greenwood "shoved his chest" into her; in her brief in opposition to this motion she described his "standing over her," but did not repeat the shoving accusation.

In addition to the altercation, Skrocki made two significant job-related errors on August 19th.  She committed her second "VAP," or vendor-approved process, deviation within ten months.  Carpenter is a producer of specialty materials; a material deviation can result in serious product failure, or at least rejection of the material by a customer.  Finally, Skrocki shut down her forge area for ninety minutes and delayed "calling a piece" of steel from the furnace without authorization to have the encounter with Greenwood and then to speak with supervisor Nick Graham about the incident.

In the immediate aftermath of their confrontation, both Skrocki and Greenwood were suspended from Carpenter.  Skrocki spoke to a human resources representative to explain the course of events leading up to the altercation.  After a review of their records, Skrocki was terminated; Greenwood was taken to step three in Carpenter's disciplinary process, meaning that one more transgression would result in his termination.

Skrocki appealed the decision via Carpenter's internal channels.  The process began when she completed a Carpenter Problem Resolution form.  Skrocki then participated in an appeal hearing.  The internal appeal resulted in a committee of Carpenter employees reviewing her case, and upholding her termination.

4

Prior to August 19, 2002, Greenwood's only disciplinary problems at Carpenter had concerned an unauthorized use of a white board in 1998, and a mis-stamped bar in 2001. In contrast, within one year of her firing alone, Skrocki had committed a stock mix error and called off of work without securing a substitute. Moreover, on the same day as the fight that led to her termination, she committed the second of two VAP deviations within ten months, and shut down her forge area without supervisor approval. Overall, her record included many more transgressions than Greenwood's. In fact, Skrocki had been taken to step one of Carpenter's disciplinary process, or beyond, seven times during her career. Prior to the fight with Skrocki, Greenwood had never been taken to the first step. Thus, when their fight occurred, Skrocki was already at step one of the process, while Greenwood was not.

**Standard of Review**

Summary judgment should be granted to the defendant if the record, including pleadings, depositions, affidavits, and answers to interrogatories demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c). In making that determination, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The question is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. See also *Sommer v. The Vanguard Group*, 461 F.3d 397, 403-04 (3d Cir. 2006).

When plaintiffs offer indirect evidence of discrimination in a Title VII disparate treatment case, the Third Circuit employs the *McDonnell Douglas* burden-shifting framework. *Simpson v.*

5

*Kay Jewlers*, 142 F.3d 639, 643-44 (3d Cir. 1998).  Under this precedent, a plaintiff must first

establish a *prima facie* case of discrimination by showing that: he or she is a member of a

protected class; he or she was qualified for the position; he or she was discharged from that

position; and the discharge took place "under circumstances that give rise to an inference of

unlawful discrimination." *Thompson v. Merck & Co., Inc.,* 2006 U.S. Dist. Lexis 51481, at *7

(E.D. Pa. July 27, 2006).

If the plaintiff establishes a *prima facie* case*,* the burden shifts to the defendant to offer a

legitimate, non-discriminatory reason for the discharge.  *Josey v. John R. Hollingsworth Corp.*,

996 F.2d 632, 647-48 (3d Cir. 1993).  With the defendant's burden met, the burden shifts back to

the plaintiff to show by a preponderance of the evidence that the defendant's proffered reasons

for the firing are pretextual.  *Id.*  The plaintiff may prove pretext either through direct evidence,

or by showing that the defendant's reasons for the discharge lack credibility.  *Id.*  To show

pretext via indirect evidence, a plaintiff "must demonstrate such weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons

for its action that a reasonable factfinder could rationally find them "unworthy of credence," and

hence infer "that the employer did not act for [the asserted] non-discriminatory reasons."

*Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994) (internal citations omitted).

**The Discrimination Claim**

In the instant matter, Skrocki's discrimination claim fails because she has not rebutted the

legitimate, non-discriminatory reasons for her termination proffered by Carpenter.  It is

questionable whether Skrocki's firing even gave rise to the inference of unlawful discrimination,

but the Court hesitates to conclude that Skrocki has failed to clear the bar of a *prima facie* case, if

only because she was the sole female member of the forge staff.  Nevertheless, even assuming *arguendo* that Skrocki properly made a *prima facie* case, she fails to offer any evidence to suggest that Carpenter's stated reasons for her termination–provoking a confrontation with a coworker, curtailing forge operations without management approval, and committing her second VAP deviation in ten months–were pretextual.

To argue that her performance was not the real reason for her dismissal, Skrocki asserts that her performance reviews at Carpenter were consistently good.  Carpenter notes, however, that it has a policy of conducting performance reviews for hourly employees only in their first year.  Thus, although Skrocki's sole performance review may have been good, she was never reviewed again.

Skrocki points to the ongoing employment of Greenwood, who participated in the confrontation with her, and other, male employees who committed VAPs but were not fired, as evidence that Carpenter's stated reasons for terminating her were pretextual.  Skrocki notes correctly that the inconsistent application of workplace discipline can give rise to the inference of discrimination.  *Pivirotto v. Innovative Systems*, 191 F. 3d. 344, 354 (3d Cir. 1999).  In fact, the Supreme Court has authorized scrutiny of a host of subjective employment practices because they may lead to discriminatory impact on protected classes of workers.  *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 990-91 (1988).  Case law also instructs, however, that employees must be similarly situated, at least as to the weight and number of workplace transgressions if not as to the type of transgressions, for comparisons of discipline to be valid.  *Pittman v. Continental Airlines, Inc.* 35 F. Supp. 2d 434, 443 (E.D. Pa. 1999) (summary judgment denied because female employee, allegedly fired for sleeping on the job, produced evidence that male employees

who slept on a similar number of occasions were not fired); *McDonald v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 283 n.11 (1976) ("precise equivalence" is not required, but "comparable seriousness" is).

In the instant case, the record shows that Skrocki was not situated similarly to any of the other forge employees; thus, she cannot point to the experience of her male co-workers as evidence that Carpenter discriminated against her.  Put simply, no forge employee other than Skrocki had committed a VAP, had an unexcused absence from work, shut down a work station, and disrupted the work environment within a span of weeks.  During discovery and in her opposition to Carpenter's motion, Skrocki noted that other, male employees who committed multiple VAPs were not terminated.  Clearly, however, those other employees did not have the panoply of disciplinary episodes that Skrocki did in the summer of 2002 alone.

Skrocki's attempts to draw parallels between her experience and Greenwood's are not persuasive.  Skrocki believed that Greenwood should have been written up, and taken to step one of the disciplinary process, for calling out sick when no one volunteered to take his shift.  Shortly after Greenwood got away with calling out, Skrocki was written up for calling out for personal reasons, and alleges that her co-workers found it unfair that Greenwood was not similarly punished.  Both Carpenter supervisors who were deposed, however, testified that Greenwood was not disciplined because he had taken time off for what they believed to be a legitimate reason, whereas Skrocki had simply taken unauthorized personal time.  Supervisor Nicholas Graham noted is his deposition that when a male employee called out for a similar, unspecified personal reason, he was disciplined.  The Court cannot and will not evaluate whether Carpenter should have believed that Greenwood was truly sick when he called out, as Title VII does not

permit courts to second-guess personnel decisions, but rather requires the Court to investigate for a discriminatory animus.  See *Fuentes*, 32 F.3d at 765 (internal citations omitted); *Carson v. Bethlehem Steel Corp.*, 82 F.3d 157, 159 (7th Cir. 1996).  The record shows that Carpenter supervisors believed that Greenwood had taken appropriate time off for an illness while Skrocki had not, which accounts for their different disciplinary status on August 18, 2002.

Moreover, Skrocki and Greenwood were not similarly situated because Skrocki's overall disciplinary record was far worse than Greenwood's, and because Skrocki instigated their disruptive encounter.  Prior to August 19, 2002, Greenwood's disciplinary file included two entries, neither of which was more serious than a "documented discussion."  In contrast, Skrocki's file included sixteen entries, and she had been taken to a first step on five occasions, and a second step twice.  Within a year of the incident, Greenwood had no disciplinary activity at all.  Skrocki, in contrast, had been disciplined for a VAP deviation, a stock mix error, and for calling off inappropriately.  As to the fight in the furnace room, two employees described Skrocki as the instigator of the disruption.  Moreover, to discuss her encounter with Greenwood with management, Skrocki had shut down her work for ninety minutes without authorization.  Taken together, these facts illustrate that Skrocki and Greenwood were not similarly situated; thus, Skrocki cannot use the comparison of their experiences as evidence of a discriminatory animus behind her discharge.

Finally, the record also shows that Carpenter routinely took employees engaged in "disruptive behavior" three steps up the disciplinary ladder.  Larry Black, disciplined for disruptive behavior in 2000, went from a clean slate to step three; Greenwood went from a clean slate to step three following his encounter with Skrocki; and Skrocki went from step one to step

four–or termination.  There is no inconsistency or incoherence in the application of Carpenter's policy which would give rise to an inference of pretext.  Therefore, because Skrocki has provided no evidence to rebut Carpenter's legitimate, non-discriminatory reasons for her termination, her gender discrimination claim fails.

**Hostile Work Environment**

        Skrocki's complaint and brief in opposition to Carpenter's motion do not articulate clearly that she is bringing a Title VII claim based on a hostile work environment, and do not include any discussion or application of relevant law.  She does aver, however, that Carpenter maintained a hostile work environment.  Thus, the Court has evaluated if there is an issue of material fact as to whether Skrocki worked in a hostile environment.  Concluding that there is no issue of material fact, the Court grants Carpenter's motion for summary judgment on this claim as well.

        To make a successful hostile work environment claim under Title VII, a plaintiff must show that he or she was subjected to harassment so severe or pervasive that it created a hostile, intimidating, or offensive working environment.  *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir. 1990).  The Third Circuit has outlined five elements that a plaintiff must show to maintain a successful hostile work environment claim: (1) the plaintiff suffered intentional discrimination because of his or her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of *respondeat superior* liability.  *Id.*  This test includes both subjective and objective indicia of hostility.  *Id.* at 1483.  When evaluating whether conduct is objectively abusive and actionable,

rather than simply offensive, the Supreme Court has instructed courts to look at the following factors: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems*, 510 U.S. 17, 21 (1993); *Reynolds v. USX Corp.*, 56 Fed. Appx. 80, 82 (3d Cir. 2003).

Carpenter argues that Skrocki's hostile work environment claim fails because she cannot make a case that she experienced intentional discrimination because of her sex. First, Carpenter notes that the explicitly sexual and sexist comments directed at Skrocki occurred before 1997, and are now time-barred as the basis for a Title VII action. *AMTRAK v. Morgan*, 536 U.S. 101, 111 (2002). Moreover, Carpenter argues that these episodes were too infrequent to form the basis of a viable claim, as courts have rejected the idea that hostile work environment claims may be founded on stray remarks or sporadic incidents. *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986) (citing *Rogers v. EEOC,* 454 F.2d 234, 238 (5th Cir. 1981)); *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 716 (3d Cir. 1997); *Stephenson v. City of Philadelphia*, 2006 U.S. Dist LEXIS 43998, at *32 (E.D. Pa. June 28, 2006).

Although Carpenter is correct that the graphically sexist incidents cited by Skrocki are not actionable alone because they are time barred, the Court may still consider them as "background evidence" in her hostile work environment claim. *Morgan*, 536 U.S. at 113. Thus, the Court has assessed the gender-neutral forms of alleged harassment of which Skrocki complained, such as her male co-worker's failure to sign up to cover her requested vacation time, mindful of the alleged episodes of overt harassment. Ultimately, the question of whether Skrocki's colleagues ostracized her because of her gender, or because of some other reason, is a question of fact.

11

*Jensen v. Potter*, 435 F.3d 444, 454 (3d Cir. 2006).

Even assuming, *arugendo*, that Skrocki's gender was the motivating factor of her co-workers behavior, her hostile work environment claim still fails because it does not meet the objective tests for severity described by the Supreme Court in *Harris*.  However uncollegial the men of the forge may have been, Skrocki never experienced harassment that was threatening, humiliating, or that interfered with her work.  Even taking the facts in the light most favorable to Skrocki, the conduct of which she complains could meet no *Harris* criteria other than frequency.

Courts have recognized hostile environments when workers have been subject to conditions ranging from demeaning language to physical assaults.  *See Reynolds*, 56 Fed. Appx. at 82 (plaintiff consistently subject to verbal hostility, including "the N word, the C word, and the B word"); *Andrews*, 895 F.2d at 1484 (plaintiff burned when a fellow police officer put a lime-like substance in her uniform).  However, the Third Circuit has also noted that Title VII cannot cure a "cold shoulder" or ostracism by co-workers.  *Jensen*, 435 F.3d at 452.  Skrocki's experience does not rise past simple ostracism to an actionable level of severity.

Skrocki's complaint and moving papers describe an unfriendly atmosphere, but not a hostile one.  Skrocki alleges that many of her Carpenter co-workers, male and female, were skeptical about her potential when she was promoted to forge specialist.  Once on the job, Skrocki alleges that the men in the forge hoped that she would "mess up."  Theresa Washington testified that the men would not help Skrocki with jobs most easily done in pairs.  Finally, Skrocki alleges that the men in the forge would refuse to cover her shifts when she sought time off on short notice.  Although these conditions were unpleasant, they cannot reasonably be characterized as severe, threatening or humiliating in any way.

Moreover, the behavior of which Skrocki complained did not interfere with her work performance.  Courts have recognized an employer's or co-worker's successful efforts to undermine a plaintiff's performance as a form of hostility.  *See Zelinski v. Pa. State Police,* 108 Fed. Appx. 700, 705 (3d Cir. 2004) (male police officer's refusal to provide protection for a female officer during undercover operation could be severe or pervasive harassment); *Durham Life Ins. Co v. Evans*, 166 F.3d 139, 146 (3d Cir. 1999) (firm contributed to a hostile work environment by firing an insurance agent's secretary, taking away her private office, and failing to provide needed legal support).  Here, however, there is no evidence in the record beyond the intuition of Skrocki and Washington to support the theory that Carpenter's male employees undermined Skrocki's work.  Although the men in the forge were not helpful to Skrocki in breaking bolts, the record contains no suggestion that Skrocki ever had difficulty breaking bolts, and none of her documented performance issues involved breaking bolts.  Finally, although Skrocki's difficulty in getting short-notice coverage for her shifts may have made her personal life harder to manage, the record contains no suggestion that her work suffered because of her colleagues' indifference to her need for time off.

In summary, the most severe objectionable behavior exhibited by the men of the forge (such as the overtly sexist comment made before 1997) was not frequent, and their most frequent objectionable behavior (such as their unhelpful responses to Skrocki's requests to time off) was not severe.  Therefore, Skrocki's claim does not have the required, objective indicia of a hostile working environment, and there is no issue of material fact to present to a jury.

For the reasons described above, defendant Carpenter Technology's Motion for Summary Judgment is GRANTED.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CATHY SKROCKI | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | NO. 05-CV-05926 |
| CARPENTER TECHNOLOGY CORP. | : | |

**<u>ORDER</u>**

AND NOW, this 29th day of March, 2007, upon consideration of the Defendant's Motion

for Summary Judgment and the Plaintiff's Brief in Opposition thereto, it is hereby ORDERED

that the Motion for Summary Judgement (Document # 11) is Granted.

_____ **BY THE COURT:**

 /s/ Thomas M. Golden     
 THOMAS M. GOLDEN, J.
_____

14